UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TWIN BRIDGES WASTE AND
RECYCLING, LLC,

                Plaintiff,

    v.                                                                          1:21-CV-263
                                                                                (DNH/DJS)
COUNTY WASTE AND RECYCLING
SERVICE, INC., *et al.*,

                Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

DREYER BOYAJIAN LLP            JAMES R. PELUSO, JR., ESQ.
Counsel for Plaintiff
75 Columbia Street
Albany, New York 12201

NIXON PEABODY                      WILLIAM REYNOLDS, ESQ.
Counsel for Defendant
677 Broadway
10th Floor
Albany, New York 12207

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

### I. BACKGROUND

For purposes of the present discovery dispute, the relevant facts are drawn from Plaintiff's Amended Complaint, filed on May 28, 2021, and the District Court's Memorandum-Decision and Order granting in part and denying in part Defendants' Motion to Dismiss, dated September 14, 2021. Dkt. Nos. 21 & 28. This case arises out

of claims of unfair business practices relating to competing waste hauling companies. *Id.* As noted in Judge Hurd's decision, what presently remains in the case are Plaintiff's claims in Count I of the Amended Complaint, alleging that the Defendants attempted to monopolize the trash hauling market through predatory pricing, and the claims contained in Count II, which allege Defendants attempted to monopolize the market through anticompetitive conduct. Dkt. No. 28. The remaining Defendants are County Waste and Recycling Services, Inc., Robert Wright Disposal, Inc., and Waste Connections, Inc. Dkt. 28 at p. 31. In his decision, Judge Hurd noted that the issues that remain involve market power, barriers to entry, predatory pricing, and improperly restrictive contracts. *Id.* at pp. 2, 7-10, & 13-22. "Predatory pricing may be defined as pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run." *Id.* at p. 16 (quoting *Cargill, Inc. v. Monfort of Colo., Inc.,* 476 U.S. 104, 117 (1986)). The District Court did note that predatory pricing claims are difficult to plead and prove. *Id.* at 17.

On or about August 8, 2022, counsel for Defendants wrote to the Court for assistance in resolving a longstanding discovery dispute. Dkt. No. 41. Defendants alleged that they had served Interrogatories on Plaintiff which sought, for the relevant time period, "the name and service address of each Twin Bridges customer by type of service, and the characteristics of the services provided to each such customer." *Id.* at pp. 1-2; Dkt. No. 41-1, Interrogatory Nos. 1, 3, 6, & 7. Defendants also served Requests for Production seeking documents, including databases and data sheets, upon which the

response to the Interrogatory was based. Dkt. No. 41-1; RFP Nos. 1, 3, 6, & 7. After some time, Plaintiff's counsel responded and indicated that they would agree to provide customer information but, primarily upon confidentiality grounds, would not agree to provide customer names, phone numbers, and email addresses. Dkt. No. 41. In response, and to reach a compromise, Defendants agreed to forgo their request for customer email addresses and telephone numbers, but still required the customer names. *Id.* Plaintiff's counsel continued to object to the production of that particular information, and as a result, on August 22, 2022, a conference call was held on the issue with the Court. After hearing from both sides, I requested further documentation, which has now been received. *See* Dkt. Nos. 47 & 48.

In their Supplemental Memorandum, counsel for Defendants produced an expert declaration indicating the need and desire for the customer names to be produced to complete the expert's analysis, as well as a representation that this information has been utilized by them in the past and can be stored safely and confidentially. Dkt. No. 47-1, Healy Decl. Counsel for the Plaintiff responded by providing exemplars of the information that they intend upon producing. Dkt. Nos. 48 & 48-1. Plaintiff continues to object to the production of all customer names on the ground that this identifying information is not relevant and material to any of the claims or defenses in the action. *Id.* Plaintiff maintains that the predatory pricing claim is based upon a statistical analysis as to whether the Defendants have cut prices below Defendants' average variable cost, and not as it relates to a particular customer. *Id.* Further, the information that they

intend on providing would allow Defendants to identify any customers that Plaintiff acquired by date and service address, together with the account pricing. Plaintiff also notes that it would be willing to respond to requests for admissions concerning customers, and will identify all customers that it intends upon producing as witnesses at trial. *Id.*

## II. DISCUSSION

As an initial matter, District Courts have broad discretion to direct and manage the pre-trial discovery process. *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004). This includes not just ruling on what is discoverable, but also the order in which discovery proceeds. Rule 26(f)(3)(B), for example, permits that discovery "be conducted in phases or be limited to or focused on particular issues."

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. That Rule has been amended, on several occasions, to reflect evolving judgments as to its proper ambit, and to create a balance between the need for evidence and the avoidance of undue burden or expense. "The touchstone of the scope of discovery is relevance; discovery sought must in the first instance be relevant to a party's claim or defense." *T.H. by Shepherd v. City of Syracuse*, 2018 WL 3738945, at *2 (N.D.N.Y. Aug. 7, 2018). Rule 26 now defines the scope of discovery to consist of information that is relevant to a "claim or defense" of the parties and that is "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The specific proportionality factors to be assessed when considering the scope of discovery are: (1) the importance of the

issues at stake in the litigation; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the discovery is outweighed by the benefit.  FED. R. CIV. P. 26(b).  Enveloping the interpretation of Rule 26 is the general standard set forth in Rule 1, which requires that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  FED. R. CIV. P. 1; *see also* FED. R. CIV. P. 1, Advisory Committee's note to 2015 amendment (noting that "the parties share the responsibility" to employ the rules consistently with the standards of Rule 1, and that "[e]ffective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure").

In general, Rule 26(c) grants the Court broad power to protect a party or person from any unduly burdensome or embarrassing disclosure.  In balancing the interests of the parties seeking evidence to prove their case and the individuals seeking to protect their privacy, the Federal Rules of Civil Procedure and related case law provide numerous additional tools to protect privacy interests, including the redaction of documents, L.R. 8.1, authorizing and directing protective orders to limit disclosure, FED. R. CIV. P. 26(c)(1), limiting disclosure to "attorney's eyes only," *Brown v. City of Oneonta*, 160 F.R.D. 18, 21 (N.D.N.Y. 1995), the use of pseudonyms, *Doe v. Colgate University*, 2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016), sealing records after weighing the public's interest in disclosure, *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d

Cir. 1995) (noting that the "privacy interests of innocent third parties. . . should weigh heavily in a court's balancing equation" in determining the public's access to judicial documents), authorizing targeted electronic discovery, *Moore v. Publicis Groupe*, 287 F.R.D. 182 (S.D.N.Y. 2012), and the use of a court-appointed special master to coordinate disclosure. FED. R. CIV. P. 53.

     Considering the nature of the case, the competitive nature of the industry, the customers' individualized privacy interests, and the general requirements of Rule 1, the Court will not grant Defendants' Motion to Compel Plaintiff to disclose their entire customer lists. While Defendants' expert has expressed a desire for this information and has noted that in other cases this information has been produced, Healy Decl. at ¶¶ 3,4, & 6, this is not always the case. *See BASCOM Global Internet Servs., Inc. v. AT&T Corp.*, 2017 WL 11490077, at *3 (N.D. Tex. July 31, 2017) ("Plaintiff's arguments that the customer names will aid the presentation of their case to a jury does not constitute an adequate justification for Defendants to produce customer names or outweigh the expense of production."). Further, the fact that there is a protective order in place does not mean that any potential piece of evidence must then be turned over. *Wells Fargo Sec., LLC v. LJM Inv. Fund, L.P.*, 2022 WL 614399, at *4 (S.D.N.Y. Mar. 2, 2022).

     Balancing the interests at stake, the Court directs that Plaintiff's counsel provide the requested information via the proposed exemplars, which will provide Defendants with a customer address, date of service, monthly charges, price changes, account characteristics, route information, pickup frequency, and contract length. Insofar as the

relevant dispute may involve contracts being used by Plaintiff or Defendants, those contracts can be provided without the need to identify all customers, or if necessary, initials or pseudonyms can be used. Defendants argue that the issue of switching customers may well be relevant to the Plaintiff's claims of market control, or Defendants' defense to that allegation, but it is not clear to the Court that this statistical information could not be obtained by using service addresses and without identifying the totality of the Plaintiff's customer lists. Defendants' expert has indicated, for her part, some ability to form the necessary opinions based upon this information. *See* Healy Decl at ¶ 4 ("This analysis could be done without customer names. . ..").

### III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Defendants' Letter-Motion to Compel production of the Plaintiffs complete client lists, Dkt. Nos. 41 & 47, is **DENIED** as set forth above; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated: October 6, 2022
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge