UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TWIN BRIDGES WASTE AND RECYCLING, LLC,

        Plaintiff,

-against-

COUNTY WASTE AND RECYCLING SERVICE, INC.,
ROBERT WRIGHT DISPOSAL, INC. and
WASTE CONNECTIONS, INC. d/b/a
"WASTE CONNECTIONS,"

        Defendants.

1:21-cv-00263 DNH/DJS

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' APPEAL OF MAGISTRATE'S DISCOVERY ORDER OF APRIL 13, 2023

William J. Dreyer, Esq.
Donald W. Boyajian, Esq.
James R. Peluso, Esq.
DREYER BOYAJIAN LLP
75 Columbia Street
Albany, New York 12210
Telephone: (518) 463-7784
wdreyer@dblawny.com
dboyajian@dblawny.com
jpeluso@dblawny.com

*Counsel for Plaintiff Twin Bridges
Waste and Recycling, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................................1

STANDARD OF REVIEW ...................................................................................................2

ARGUMENT

THE MAGISTRATE'S DECISION WAS NOT A CLEAR ABUSE OF DISCRETION
AND SHOULD BE AFFIRMED ..........................................................................................3

I. THE FINANCIAL INFORMATION OF NONPARTY SCOTT EARL OR OTHER
    PERSONAL OWNERS OF TWIN BRIDGES IS NOT SUBJECT TO DISCLOSURE.......3

    A. Defendants Fail to Cite a Single Case Involving an Antitrust Claim for Monopolization
       Where a Court Compelled the Disclosure of a Nonparty Shareholder's Personal
       Financial Information.........................................................................................................5

    B. The Personal Financial Information of Twin Bridges' Owners is Not Relevant
       to Any Claims or Defenses in this Case and Disclosure Would be Prejudicial................7

    C. The Cases Relied Upon by Defendants Are Inapposite.....................................................9

II. INFORMATION RELATED TO ANY "POTENTIAL" PURCHASE OR SALE
    OF TWIN BRIDGES OR ANY "POTENTIAL" BUSINESS ACQUISITIONS BY
    TWIN BRIDGES OR SCOTT EARL IS NOT DISCOVERABLE .....................................11

CONCLUSION.......................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abrams v. General Elec. Co.*,
   1997 WL 458446 (N.D.N.Y. Aug. 4, 1997)..................................................................3

*Condit v. Dunne*,
   225 F.R.D. 100 (S.D.N.Y. 2004) ................................................................................10

*Conopco, Inc. v. Wein*,
   2007 WL 2119507 (S.D.N.Y. July 23, 2007) ...............................................................9

*DIV-Com, Inc. v Tousignant*,
   116 A.D.3d 1118 (3d Dep't 2014) .............................................................................11

*Doe v. Marsh*,
   899 F. Supp. 933 (N.D.N.Y. 1995) ..............................................................................2

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   301 F.R.D. 449, 454 (N.D. Cal 2014) ...................................................................4, 12

*In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*,
   319 F.R.D. 132 (S.D.N.Y. 2016) .................................................................................9

*Kelco Disposal, Inc. v. Browning-Ferris Industries of Vermont, Inc.*,
   845 F.2d 404 (2d Cir. 1988) ........................................................................................8

*Matthews v. USAir, Inc.*,
   882 F. Supp. 274 (N.D.N.Y. 1995) ..............................................................................2

*Momento, Inc. v. Seccion Amarilla USA*,
   2009 WL 10696217 (N.D. Cal. Sept. 17, 2009)........................................................10

*Moss v. Enlarged City School Dist. of City of Amsterdam*,
   166 F. Supp. 2d 668 (N.D.N.Y. 2001) .....................................................................2, 3

*Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal and Professional
   Publications, Inc.*, 63 F.3d 1540 (10th Cir. 1995) ......................................................9

*Nobody in Particular Presents, Inc. v Clear Channel Communications, Inc.*,
   311 F. Supp. 2d 1048 (D. Colo. 2004).........................................................................7

*Pemrick v. Stracher*,
   1992 WL 697636 (N.D.N.Y. March 27, 1992)...........................................................3

*Solow v Conseco, Inc.*,
  06-CV-5988 BSJTHK, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008) ................................ 8

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) ................................................................................................ 6

*Tompkins v. R.J. Reynolds Tobacco Co.*,
  92 F. Supp. 2d 70 (N.D.N.Y.2000) ........................................................................ 2

*Tops Mkts.*,
  142 F.3d 90 (2d Cir. 1998) .................................................................................... 6

*Trudeau v NYS Consumer Protection Bd.*,
  237 F.R.D. 325 (N.D.N.Y. 2006) .......................................................................... 4

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966) .............................................................................................. 6

**Statutes**

15 U.S.C § 2 ..................................................................................................................... 1

28 U.S.C. § 636(b)(1)(A) ................................................................................................. 2

**Rules**

Fed.R.Civ.P. 72(a) ............................................................................................................ 2

# PRELIMINARY STATEMENT

Plaintiff Twin Bridges Waste and Recycling, LLC ("Twin Bridges") submits this brief in opposition to the defendants' appeal (Doc. 71) of the Magistrate's Discovery Order dated April 13, 2023 (Doc. 70). The appeal should be denied in entirety. Defendants fail to establish that the Magistrate's decision was clearly erroneous or contrary to law. Rather, the Magistrate's decision properly considered and balanced the relevance and proportionality of defendants' proffered need for the information sought against the harm to privacy and competitive business interests of Twin Bridges and its nonparty personal owners. In fact, the Magistrate's decision applies common sense in curbing the disclosure sought. First, the personal financial information of nonparty shareholders of Twin Bridges is not subject to disclosure. Second, information related to any "potential" purchase or sale of Twin Bridges or any "potential" business acquisitions by Twin Bridges or its personal shareholders is not discoverable. Lastly, the Magistrate properly exercised discretion in denying the information requested pending further discovery and proceedings. In short, the Magistrate's well-thought-out decision was not an abuse of discretion and should be affirmed.

# FACTUAL AND PROCEDURAL BACKGROUND

By Decision and Order dated September 14, 2021, the Court denied dismissal of Counts I and III of plaintiff's Amended Complaint (Doc. 21) alleging antitrust violations against defendants under 15 U.S.C § 2 for attempted monopoly through (a) predatory pricing and (b) anticompetitive conduct. (Doc. 28). The Court is respectfully referred to the Amended Complaint for a recitation of the facts. The parties have subsequently engaged in substantial discovery efforts, during which a number of disputes have arisen that largely have been resolved by the parties. Other discovery issues were resolved after conferences with the Magistrate. On two occasions, formal letter motions to compel production were filed resulting in discovery orders issued by the Magistrate on

October 6, 2022 (Doc. 49) and April 13, 2023. (Doc. 70). Defendants subsequently filed appeals from said decisions. (Doc. 50; Doc. 70). Defendants' appeal from the Magistrate's order dated October 6, 2022 was fully briefed, but then the appeal was withdrawn by defendants. Plaintiff submits this brief in opposition to defendants' appeal of the Magistrate's order dated April 13, 2023. Prior to the Magistrate's written decision, the Magistrate held oral argument on March 22, 2022. A transcript of the oral argument is part of the instant record on appeal. (D. 71-3).

## STANDARD OF REVIEW

"As to non-dispositive matters, a district court shall reverse a Magistrate Judge's findings only if they are 'clearly erroneous or contrary to law.'" *Doe v. Marsh*, 899 F. Supp. 933, 934 (N.D.N.Y. 1995) (citing 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a)). "Pursuant to this highly deferential standard of review, magistrate judges are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if the discretion is abused." *Id*. Notably, "[a] magistrate is afforded broad discretion with respect to discovery matters because no one factor controls discovery disputes, rather the magistrate must balance the need for the information sought against the burden of producing it and the exposure to irreparable harm." *Matthews v. USAir, Inc.*, 882 F. Supp. 274, 275 (N.D.N.Y. 1995).

"A magistrate judge's finding is clearly erroneous when it is against the clear weight of the evidence or when the court has the definite and firm conviction that a mistake has been committed." *Moss v. Enlarged City School Dist. of City of Amsterdam*, 166 F. Supp. 2d 668, 670 (N.D.N.Y. 2001) (internal quotations and citations omitted). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y.2000). "Considering that magistrate judges are given broad discretion with respect to pre-trial discovery matters, reversal is warranted only

when that discretion is abused." *Abrams v. General Elec. Co.*, No. 95–CV–1734, 1997 WL 458446, at *1 (N.D.N.Y. Aug. 4, 1997). That "'reasonable minds may differ on the wisdom of granting [a party's] motion' does not mean that the decision is clearly erroneous or contrary to law." *Moss*, 166 F. Supp. 2d at 670 (quoting *Pemrick v. Stracher*, No. 90–CV–849, 1992 WL 697636, at *1 (N.D.N.Y. March 27, 1992)).

## ARGUMENT

### THE MAGISTRATE'S DECISION WAS NOT A CLEAR ABUSE OF DISCRETION AND SHOULD BE AFFIRMED

The Magistrate did not abuse his discretion in rejecting defendants' overbroad and prejudicial discovery demands. First, defendants make a novel argument without any case law precedent seeking disclosure of the personal financial and tax records of plaintiff Twin Bridges' nonparty investors/owners. Such information is not relevant to any claim or defense in this action. Defendants also want real time information on any "potential" purchase or sale of Twin Brides or any "potential" business acquisitions by Twin Bridges—before any deal is announced let alone consummated. In essence, defendants want a seat at the executive boardroom table of Twin Bridges. Such disclosure would harm Twin Bridges' confidential competitive business interests and give defendants an unfair competitive advantage.

### I. THE PERSONAL FINANCIAL INFORMATION OF NONPARTY SCOTT EARL OR OTHER PERSONAL OWNERS OF TWIN BRIDGES IS NOT SUBJECT TO DISCLOSURE.

Defendants' demand for the personal financial information of any *nonparty* owners of the corporate plaintiff Twin Bridges is palpably improper, overbroad, prejudicial, and not relevant to the elements of proof in this case. Plaintiff Twin Bridges Waste and Recycling, LLC is solely owned by its parent Consolidated Waste Services, LLC ("CWS"). Scott Earl is one of the shareholders of CWS, i.e., LLC Members. It is clear that these demands are intended to harass

Mr. Earl and chill plaintiff Twin Bridges' attempt to enforce the antitrust laws. *See* (Doc. 70, Magistrate's Discovery Order dated April 13, 2023 at p. 5 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 454 (N.D. Cal 2014) [noting that "the policy underlying the antitrust laws militates against permitting broad discovery against antitrust plaintiffs where, for instance, the discovery sought would simply enable the defendant to shift attention away from an otherwise illegal and actionable scheme" or "run the risk of chilling private enforcement of the antitrust laws").

Defendants fail to cite a single case involving an antitrust claim for monopolization where the court compelled disclosure of a nonparty shareholder's personal financial or tax records. As held by the Magistrate, "[a]t issue in this litigation is the financial condition of the competing business entities, not necessarily the personal financial ability of any one owner or shareholder. Accordingly, without some further detailed showing of necessity, Defendants' request for an order to compel production as to these two requests is denied." (Doc. 70, p. 4).

Even if such authority existed, "courts within the Second Circuit have found personal financial information to be presumptively confidential or cloaked with qualified immunity." *Trudeau v NYS Consumer Protection Bd.*, 237 F.R.D. 325, 331 (N.D.N.Y. 2006). Defendants have the burden of showing that such information is relevant, probative, narrowly tailored, unavailable from other sources, proportional to the needs of this case, and that disclosure outweighs any privacy right, prejudice or harm to plaintiff. Here, defendants fail to make any such showing.

Moreover, plaintiff has disclosed audited financial statements and other information of Twin Bridges and its parent company Consolidated Waste Services LLC, which identify the contributions, loans, and equity holdings of the shareholders of CWS, i.e., LLC Members. These confidential documents were produced pursuant to the protective order in this case. (Doc. 38).

While the company's balance sheet may be discoverable, the accounting of corporate shareholder loans does not open the door to discovery of the private finances or tax information of shareholders. Defendants' argument that "Mr. Earl is the ultimate 'parent' of Twin Bridges" is specious. Twin Bridges and its parent CWS are both incorporated entities. Mr. Earl is not a party to this action. Defendants' citation to news articles reporting on the efforts of Mr. Earl on behalf of Twin Bridges does not strip the company of its legal status as a separate business entity.

Disclosure of unrelated personal income, assets or liabilities of any shareholder is simply not relevant and would constitute an unwarranted invasion of privacy. The Magistrate properly rejected defendants' fishing expedition seeking information that is outside the scope of this litigation. Contrary to defendants' argument, plaintiff's shareholders have no legal duty to personally "bankroll" the company to "keep it afloat" (R. 19; Doc. 71-1 at ECF p. 17) if the company is unable to fairly compete because of defendants' violation of the antitrust laws, i.e., predatory pricing and anticompetitive conduct.

**A. Defendants Fail to Cite a Single Case Involving an Antitrust Claim for Monopolization Where a Court Compelled the Disclosure of a Nonparty Shareholder's Personal Financial Information.**

Defendants fail to cite any legal authority compelling the disclosure of a nonparty shareholder's personal financial information in an antitrust claim for attempted monopoly by a corporate plaintiff. As discussed below in Points I.B and I.C, such information is not relevant or probative, and the cases relied upon by defendants are readily distinguishable.

Specifically, defendants' document requests Nos. 15 & 16 improperly seek:

> 15. All financial statements of Scott Earl or which include information about Scott Earl, for all or any part of the period from January 2019 through present, including but not limited to, all annual and periodic statements of income and expense, profit and loss statements, cost statements and detailed cost schedules, balance sheets, and audit reports.

16. All financial statements of any person who is an owner of Twin Bridges or has an interest in its profits, including but not limited to, all annual and periodic statements of income and expense, profit and loss statements, cost statements and detailed cost schedules, balance sheets, and audit reports.

(R. 30).

Defendants proffer that the personal financial information of Twin Bridges' owners is relevant to whether there is a "dangerous probability of success" that defendants will prevail in attaining monopoly power, which is "the power to control prices or exclude competition." *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993); *Tops Mkts.*, 142 F.3d 90, 99–100 (2d Cir. 1998) ("To state an attempted monopolization claim, a plaintiff must establish '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'") (quoting *Spectrum*, 506 U.S. at 454).

Essentially, defendants argue that if a private waste company is unable to remain solvent and compete against them in a price war (i.e., where defendants are pricing below their own average variable cost and erecting barriers to exclude competition), that somehow the individual shareholders of the rival corporate entity are required to spend their personal wealth to "bankroll" the entity and "keep it afloat." (R. 19). No such duty exists at law. By analogy, if Warren Buffet invested in a garbage company that was unable to fairly compete because of predatory pricing or exclusionary conduct by a competitor, the law does not require that he risk, leverage and/or lose his personal fortune to establish monetary damages or injunctive relief enjoining the monopoly power. To hold otherwise would undermine the free enterprise economy, where the market determines prices, products and services, rather than the government or an oligarchy of wealthy individuals and corporations.

### B. The Personal Financial Information of Twin Bridges' Owners is Not Relevant to Any Claims or Defenses in this Case and Disclosure Would be Prejudicial.

Plaintiff Twin Bridges and its parent CWS are corporate entities. The personal finances of its nonparty shareholders are not relevant to the elements of any claims or defenses in this case. Plaintiff has disclosed relevant corporate financial information, including the itemized income and expenses, balance sheets, and audited financial statements of Twin Bridges and CWS. These financial documents show, inter alia, the corporate assets, liabilities, cash flows, profit/loss, debt, and retained earnings, including the individual shareholder (i.e., LLC Member) contributions, withdrawals, loans and equity. These documents are available for in-camera inspection by the Court if requested.

Whether a "dangerous probability of success" exists that defendants will succeed in achieving monopoly power has no bearing on the personal finances of plaintiff's shareholders. To the contrary, courts have held that "[f]actors to be considered in determining dangerous probability include (1) the defendant's ability to control prices or exclude competition, (2) defendant's market share, (3) the number and strength of other competitors, or whether defendant is a multimarket firm, (4) market trends, and (5) entry barriers." *Nobody in Particular Presents, Inc. v Clear Channel Communications, Inc.*, 311 F. Supp. 2d 1048, 1099 (D. Colo. 2004). The "number and strength of competitors" is but one factor to consider, and no court has held that this analysis turns on the personal finances of a corporate competitor's individual shareholders.

The totality of the relevant factors plainly focuses on defendants' conduct. Here, defendant Waste Connections, Inc. is the third largest North American provider of waste collection and disposal services. The company's admitted "Operating Strategy" is to "avoid highly competitive, large urban markets and instead target markets where we can attain high market share either through exclusive contracts, vertical integration or asset positioning" by "controlling the waste

stream" and "where competitive barriers to entry can be developed" (R. 167, 319); (Doc. 12, Amend. Compl. ¶¶ 74-75) (quoting WC 2019 Annual Report at pp. 1 & WC LinkedIn page).

Plaintiff's complaint submits direct proof of defendants' attempt to achieve monopoly power in the Capital Region market and exclude competition by Twin Bridges. For example, in a written memorandum sent to its employees, defendants declared a "war" against Twin Bridges; characterized Scott Earl as "a little fish in a big pond;" pledged that the war "is a marathon, not a sprint;" and promised that Waste Connections will win the war no matter the cost, including directing their customer service/sales team to reduce prices to keep customers "at whatever the cost" and giving away "over $2 million in free service." (R. 333); Doc. 21, Amend. Compl. ¶¶ 96, 98-100, 109). This proof is similar to facts in *Kelco Disposal*, where the defendant told its employees to "[p]ut [plaintiff] out of business. Do whatever it takes. Squish him like a bug" and if "it meant give [services] away, give [them] away." *Kelco Disposal, Inc. v. Browning-Ferris Industries of Vermont, Inc.*, 845 F.2d 404, 406 (2d Cir. 1988).

At best, the strength of Twin Bridges and its parent company's balance sheet is relevant—but not the personal finances of its shareholders. Defendants are welcome to question plaintiff's representatives about the company's financial statements, including its resources and funding. However, neither Mr. Earl nor other shareholder have a legal obligation to personally "bankroll" a business that is unable to fairly compete (i.e., charge reasonable market prices to cover expenses) due to defendants' predatory pricing and other anticompetitive conduct, especially in the face of self-declared "war" by defendants to put Twin Bridges out of business "at whatever the cost."

Moreover, even if remotely relevant, the disclosure sought is unduly prejudicial to the nonparties' privacy rights. *See e.g.*, *Solow v Conseco, Inc.*, 06-CV-5988 BSJTHK, 2008 WL 190340, at *1 (S.D.N.Y. Jan. 18, 2008) ("In short, documents sought in the subpoena have little

or no relevance to the claims and defenses in this action, while having potential value to Solow in his contemporary competitive relationship with Macklowe, a non-party to this litigation. Weighing this against Macklowe's legitimate interest in maintaining the confidentiality of proprietary documents bearing on his assets and financial plans, the Court concludes that the motion to quash the subpoena should be granted.").

### C. The Cases Relied Upon by Defendants Are Inapposite.

The cases relied upon by defendants are inapposite to the claims in this case and readily distinguishable. Each case is briefly addressed below.

- *In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 134, 136 (S.D.N.Y. 2016). In this estate proceeding, the plaintiff claimed that a nonparty attorney received funds that showed collusion between a trust and the estate and sought to subpoena the law firm's bank records. Defendants cite this case for the proposition that "sensitive financial information is generally discoverable in federal court" (Doc. 71-1, ECF p. 18). Defendants omit the court's analysis of relevance and the "probative value" of the narrowly tailored subpoena seeking specific bank statements that would evidence deposits to support the claims of collusion. Here, Twin Bridges and its parent have disclosed relevant confidential financial records. This case does not support defendants' attempt to pry into plaintiff's shareholders' personal finances.

- *Conopco, Inc. v. Wein*, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007). This RICO action alleged that the defendant corporations were created to perpetrate a fraudulent scheme by the defendant President and owner, who was a named party, and alleged to have personally enriched himself. These facts are inapposite to the claims of Twin Bridges.

- *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal and Professional Publications, Inc.*, 63 F.3d 1540, 1555 (10th Cir. 1995). Defendants cite this antitrust

9

case in a footnote to their brief for the proposition that they are entitled to disclosure of the "resources of a party's parent." (Doc. 71-1 ECF p. 8 n. 7). Here, Twin Bridges has disclosed the financial records of is parent company.

- *Momento, Inc. v. Seccion Amarilla USA*, 2009 WL 10696217, at *5 (N.D. Cal. Sept. 17, 2009). Defendants footnote this California predatory pricing decision which denied a motion to dismiss and held that the plaintiff sufficiently pled the element of dangerous probability of recoupment where, among other factors, the *named defendant* had the "financial backing of a *known Mexican monopoly ...*" *Id*. (emphasis added). Defendants omit this portion of the decision. Here, plaintiff Twin Bridge's parent is CWS, a lawful domestic business entity.

- *Condit v. Dunne*, 225 F.R.D. 100, 112 (S.D.N.Y. 2004). In this defamation action seeking deposition testimony concerning the named plaintiff's "sexual relationships, real property interests, financial, and employment information" the court compelled disclosure of the alleged "special damages arising from plaintiff's permanent impairment to obtain or maintain gainful employment." *Id*. Here, in contrast, defendants are seeking sensitive discovery from persons who are not parties to this case, and whose personal finances are not relevant to any claim or defense.

- *DIV-Com, Inc. v Tousignant*, 116 A.D.3d 1118, 1120 (3d Dep't 2014). In this case the defendant was alleged to have stolen his employer's "money, gold coins and precious metals" and co-mingled his employer's funds with his personal funds thereby warranting discovery. *See id.* at 119-20. Here, again, defendants improperly seek discovery from persons who are not parties, whose personal finances are confidential, and the information sought is not probative to the claims.

As determined by the Magistrate, "the personal financial ability of any one owner or shareholder" and "the information sought is overboard and not proportionally relevant to the needs of the case." (Doc. 70, p. 4). Alternatively, as proposed to the Magistrate, plaintiff is willing to

cooperate with the Court to review in camera the financial records of Twin Bridges and its parent, which evidence the company's adequate funding. (R. 371).

II. **INFORMATION RELATED TO ANY "POTENTIAL" PURCHASE OR SALE OF TWIN BRIDGES OR ANY "POTENTIAL" BUSINESS ACQUISITIONS BY TWIN BRIDGES OR SCOTT EARL IS NOT DISCOVERABLE.**

Plaintiff has disclosed information on its completed business acquisitions. (R. 17) ("Now, we have disclosed completed acquisitions. Twin Bridges has purchased some smaller waste collection companies. And the defendants have likewise identified completed acquisitions that they have made in the market."). Defendants, however, are not entitled to disclosure of information related to any "potential" purchase or sale of Twin Bridges or any "potential" business acquisitions by Twin Bridges or Scott Earl. Such information would harm Twin Bridges' confidential competitive business interests and give defendants an unfair competitive advantage as well as the potential to interfere with plaintiff's prospective business relationships.

Specifically, defendants' document demands 86 and 87 seek:

> 86. All documents from July 2019 to the present relating to the potential purchase or sale of Twin Bridges.
>
> 87. All documents from July 2019 to the present relating to the acquisition or potential acquisition of any assets of or ownership interests in any business by Scott Earl or Twin Bridges.

(R. 43-44).

Defendants cite no case law authority for disclosure of information related to "potential" acquisitions. Instead, defendants attempt to bootstrap the element of "dangerous probability of success" for monopolization as a gateway to unfettered discovery of confidential competitive business information. However, once again, defendants improperly seek real time information on potential business deals before they are announced or consummated. Even if relevant, the

11

probative value of such information is outweighed by the prejudice and potential for competitive harm to Twin Bridges. As held by the Magistrate's April 13, Decision and Order:

> Plaintiff's counsel has indicated that his client has provided some documentation concerning actual business acquisitions made by the LLC, but objects to Defendants' broader request. In Plaintiff's view, if granted, this request would impose a requirement on Twin Bridges to notify Defendants, fierce business competitors, every time a potential buyer expressed interest in acquiring Twin Bridges. Indeed, even if such a response were required without disclosing financial figures, knowledge of a potential purchase may place Plaintiff at a significant competitive disadvantage. The Court considers several factors in deciding this request. First, there is a general reluctance to allow a defendant in an antitrust suit to pursue broad discovery in an effort to chill a third-party's attempted enforcement of the antitrust laws. *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 454 (N.D. Cal. 2014). In addition, the District Court will consider all corporations or individuals participating in the relevant market when determining this "dangerous probability" issue, rather than focusing singularly on a particular company such as Plaintiff. Third, the Plaintiff in this case is not objecting to any production of its financial information, such as profit and loss statements for the LLC, but merely to a wide-ranging fishing expedition as to potential offers or inquiries for a business acquisition of Twin Bridges. While the Court does see a theoretical potential for relevant information in this area, it will not direct a response by Plaintiff to this portion of the demand at this time. The Court concludes that the limited nature of potential relevancy, especially coupled with the speculative and hypothetical nature of a potential purchase offer, does not outweigh the disruption that this discovery demand could cause between two business competitors. If, after further discovery, Defendants are able to provide more specific, independently-obtained, and concrete information concerning the nature of, for example, any third-party evaluation or identifiable purchase offer, the Court may reconsider this demand, or consider an in camera review of a particular document. Accordingly, this request is **denied**.

(Doc. 70).

Importantly, this is not a case where the risk of competitive harm is speculative. Plaintiff has alleged in this action and the companion New York State Supreme Court case, that defendants have interfered with Twin Bridges' existing and prospective customers, attempted to stop other waste companies from doing business with Twin Bridges, and preemptively purchased defendant Robert Wright Disposal, Inc. to prevent Twin Bridges from competing in southern Albany County. (Doc. 21, Amend. Compl. ¶¶ 77-86, 96-106, 236-306). It is anticipated that discovery and witness

depositions will establish these facts, which are consistent with the defendants' operating strategy to erect barriers to entry and defendants' self-declared "war" against Twin Bridges to put it out of business.

In fact, defendants' intentional conduct to monopolize the Capital Region waste market and erect barriers to entry by Twin Bridges is ongoing. Recently, defendants interfered with one of Twin Bridge's new municipal business relationships. The municipality, the City of Mechanicville in Saratoga County, was previously serviced by defendant County Waste for both waste collection and waste disposal. (R. 406, Court Transcript). For years, the City's trash was dumped at the Colonie Landfill, which is owned by the Town of Colonie and operated by defendant Waste Connections, Inc. through one of its subsidiaries. When the contract for waste collection expired and was put out to public bid, Twin Bridges won the contract. However, when Twin Bridges showed up at the Colonie Landfill to dump the garbage, County Waste refused plaintiff's trucks from going into the facility despite the City's pre-existing contract with the Colonie Landfill for disposal. (R. 406).

The Magistrate's decision also keenly recognized that in considering whether a dangerous probability of success exists that defendants will succeed in achieving monopoly power, the number and strength of competitors is but one factor to consider and is not limited to Twin Bridges. Moreover, in this case Twin Bridges has agreed to produce financial information, including audited financial statements, balances sheets, cash flow statements, profit and loss statements, and detailed revenue and expense reports. In short, defendants know the financial health of Twin Bridges, and can draw their own opinions (whether based on defendants' industry experience or experts) on the "relative financial strength of the predator and its intended victim." (Doc. 71-1, ECF p. 10).

For the same reason, and those discussed above, the Court should affirm the Magistrate's denial of defendants' demand for information related to the personal business interests of nonparty Scott Earl, including information related to Mr. Earl's "acquisition or potential acquisition of any assets or ownership interests in any business." (Doc. 71-1, EFC p. 9). Again, it is evident that these demands are outside the scope of this litigation and intended to harass Mr. Earl and chill plaintiff Twin Bridges' prosecution of the antitrust laws.

Defendants' argument that documents which are not otherwise discoverable should be disclosed pursuant to the parties' stipulated protective order in this case is a red herring. The proper question is whether the documents are discoverable, not whether they are confidential. Otherwise, every document and piece of information would be subject to disclosure in every case irrespective of its relevance, probative value, prejudice, or other potential for harm. To order such disclosure would also have a chilling effect on the use of stipulated protective orders. Here, plaintiff never intended the protective order to be used as both a sword and shield in discovery.

Finally, the Magistrate properly exercised his discretion to deny the requested relief pending further discovery and proceedings.

## CONCLUSION

Wherefore, the Court should affirm the Magistrate's April 13, 2023 Decision and Order and deny defendants' appeal in its entirety.

Respectfully submitted,

DREYER BOYAJIAN LLP

James R. Peluso
jpeluso@dblawny.com

cc: All counsel via EFC