**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

TWIN BRIDGES WASTE AND RECYCLING,
LLC
                               Plaintiff,

        v.                                       1:21-CV-0263
                                            (DNH/DJS)

COUNTY WASTE AND RECYCLING SERVICE,
INC, _et al._,
                           Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

DREYER BOYAJIAN, LLP           DONALD W. BOYAJIAN, ESQ.
Attorneys for Plaintiff              JAMES R. PELUSO, ESQ.
75 Columbia Street                LAUREN S. OWENS, ESQ
Albany, NY 12210

BOIES, SCHILLER & FLEXNER LLP      ADAM SHAW, ESQ.
Attorneys for Plaintiff
30 South Pearl Street, 11th Floor
Albany, NY 12207

NIXON PEABODY, LLP              WILLIAM E. REYNOLDS, ESQ.
Attorneys for Defendants           KELLY A. SPRAGUE, ESQ.
677 Broadway, 10th Floor
Albany, NY 12207

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION AND ORDER

     Presently before the Court is the Plaintiff's Motion to alter the Uniform Pretrial

Scheduling Order ("UPSO") and to file a Second Amended Complaint ("SAC") to assert

a new claim of conspiracy to monopolize, in violation of Section 2 of the Sherman Act,

15 U.S.C. § 2.  Dkt. No. 132.  Defendants have opposed the Motion.  Dkt. No. 136.  For the reasons that follow, the Motion to File a Second Amended Complaint is denied.

## I.    PROCEDURAL HISTORY

This antitrust lawsuit was commenced over three years ago.  Dkt. No. 1, Compl. It was filed in response to a related case by Defendants against Plaintiff in New York state court, a claim which is still pending and has been tracking the federal action.  In response to an early Motion by Defendants, an Amended Complaint was filed, as of right, on April 28, 2021.  Dkt. No. 21, Am. Compl.  Next, a Motion to Dismiss the Amended Complaint was made by County Waste and Recycling Services, Inc., Dkt. No. 22, and that Motion was granted in part and denied in part by District Court Judge David Hurd on September 14, 2021, Dkt. No. 28, Memorandum Decision and Order dated September 14, 2021 ("MDO").

As part of that ruling, the District Court catalogued Plaintiff's allegations of anticompetitive conduct, which included Defendants cutting prices below their cost to starve Plaintiff out of the market; defaming Twin Bridges owner Scott Earl as well as Twin Bridges itself to smear their reputations; keeping Robert Wright involved with the Defendants because he could "control" Plaintiff's owner; locking in existing customers using automatic renewals and price matching options; and denying and attempting to deny Plaintiff access to Defendants' landfills, as well as landfills of others, in order to drive up Plaintiff's costs.  MDO at pp. 7-10.  As part of the District Court's ruling, Judge Hurd concluded that Twin Bridges "refusal to deal" claim did not pass muster, as there

was no showing that Defendants reneged on any existing agreement to use their landfills, and there were feasible alternatives that were being utilized by the Plaintiff. *Id.* at p. 22, 30. Accordingly, that aspect of the federal claim was dismissed. *Id.*

Defendants then answered the Amended Complaint, and a Rule 16 conference was held on December 17, 2021, at which time discovery deadlines were set based, in part, on the recommendations of the parties. Dkt. No. 32, UPSO; *see also* Dkt. No. 31, Civil Case Management Plan. Importantly for purposes of the present Motion, the deadline to file for amendments of the pleadings was agreed to as January 14, 2022. UPSO at p. 1. Fact discovery was to be completed by September 30, 2022. *Id.* at p. 2. What followed can best be described as an aggressive, prolonged, and somewhat contentious period of discovery, which has required extensive court intervention and spurred multiple appeals. In particular, the Court held discovery conferences on August 18, 2022, August 22, 2022, December 20, 2022, March 22, 2023, May 2, 2023, June 29, 2023, July 18, 2023, September 8, 2023, October 12, 2023, and February 1, 2024. Because of discovery disputes, as well as issues involving the production of substantial electronic information, the discovery deadlines were repeatedly extended, first to December 29, 2022, next to April 28, 2023, then October 2, 2023, and, finally, to June 28, 2024, the present deadline. At no point during this extensive discovery process, however, did Plaintiff request that the deadline to amend pleadings be extended. Thus, at the time the present Motion to file a Second Amended Complaint was submitted, more than two years had passed from the applicable deadline.

## II.    DISCUSSION

Initially, the Court must consider its role in this process.  Pursuant to the local rules of the Northern District of New York, magistrate judges are assigned at the beginning of the case to manage discovery, hold conferences, and issue scheduling orders which, as noted below, can limit the time to amend pleadings.  L.R. 3.1 & 72.2. Rule 16 is the principal source of this Court's authority to achieve the fundamental purpose stated in Rule 1 -  securing "the just, speedy, and inexpensive determination of every action."  FED. R. CIV. P. 1 & 16.  To accomplish this, Rule 16(a) authorizes a wide range of case management tools, including the following:

(1)    expediting the disposition of the case;
(2)    establishing early and continuing controls of the case will not be protracted because of lack of management;
(3)    discouraging wasteful pretrial activities;
(4)    improving the quality of the trial through more thorough preparation; and
(5)    facilitating settlement.

At the pretrial conference contemplated by Rule 16, the Court may consider "amending the pleadings *if necessary or desirable*."   FED. R. CIV. P.16(c)(2)(B) (emphasis added).  At the end of the conference, the court issues an order that controls discovery in the case and as part of the Order, the Court must limit the time to join other parties or amend the pleadings.  FED. R. CIV. P. 16(a)(3)(A).  This is done to "offer a measure of certainty in pretrial proceedings." *Parker v. Columbia Pictures Indus*., 204 F.3d 326, 340 (2d Cir. 2000).  The importance of the UPSO to a district court's effective

control and management of a case cannot be overstated. *Kassim v. City of Schenectady*, 221 F.R.D. 363, 365 (N.D.N.Y. 2003).

Turning to the merits, the proposed Second Amended Complaint does not explicitly add any new parties, but it does potentially change the theory of the case by adding a claim of conspiracy to monopolize. *See* Dkt. No. 132-3, PSAC at ¶¶ 389-403. As noted by the County Waste Defendants, a conspiracy to monopolize claim generally requires: (1) a showing of the existence of a conspiracy or agreement between two or more people or entities, (2) the specific intent to monopolize, and (3) overt acts in furtherance of the conspiracy. *See generally, Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 795 (2d Cir. 1987). The conspiracy to monopolize allegation in the PSAC is different from the original attempt to monopolize claim in two significant ways. First, it must, of necessity, involve more parties or entities than just the named Defendants. This is because when pleading such a claim, commonly owned companies are treated as one entity under the Sherman Act. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767, 771 (1984). Thus, a corporate parent and its wholly owned subsidiary are incapable of conspiring in violation of the Sherman Act as a matter of law. *Id*. In this case, therefore, the conspiracy claim requires an agreement with others not associated with the County Waste Defendants, and further requires an allegation of an agreement to commit an act of anticompetitive conduct for the intent of having County Waste establish a monopoly.

Second, the conspiracy claim is different than an attempt to monopolize claim in that the latter requires a showing of a dangerous probability of success, and the former does not. *Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d at 796.

In support of the Motion, Plaintiff's counsel notes that the new theory of the case arises out of the same statute (the Sherman Act) as the initial claim; that in their view it would not require any modification of the Scheduling Order as the witnesses needed to support the new claim are already scheduled to be deposed; that there was no undue delay in filing the Motion, nor any bad faith; and that the Defendants will not in any way be prejudiced.  Dkt. No. 132-1, Pl's Mem of Law at pp. 1-6.

Defendant's counsel, on the other hand, questions both the merits of the proposed new theory, as well as its timeliness.  Dkt. No. 136, Def's Mem of Law in Opp.   In particular, Defense counsel attacks the specificity of the conspiracy claim; the failure of the PSAC to allege the necessary intent required by the statute; the failure to properly allege an overt act in furtherance of the alleged conspiracy with third parties; and the failure to offer any explanation for the multiyear delay in asserting the new claim.  *Id.* at pp. 2-12.

District courts are vested with broad discretion to grant a party leave to amend the pleadings. *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 345 (2d Cir. 2004). Federal Rule of Civil Procedure 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires." FED. R. CIV. P. 15(a)(2); *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006).   This permissive

6

standard matches the court's strong preference for resolving disputes on the merits. *Williams v. Citigroup Inc.,* 659 F.3d 208, 212-13 (2d Cir. 2011). Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co*., 101 F.3d 263, 271-72 (2d Cir. 1996)).

Understandably, Plaintiff's counsel relies heavily upon the Rule 15(a) standard when arguing in favor of the Motion. *See* Dkt. No. 132-1 at pp. 3-8. However, where the motion to amend is filed *after* the deadline imposed by the scheduling order, the plaintiff must also show "good cause" why that order was not complied with. *Sacerdote v. New York Univ*., 9 F.4th 95, 115 (2d Cir. 2021). As noted in *Sacerdote:* "The period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4)." *Id.* "In order to show good cause, the moving party must demonstrate that, despite having exercised diligence in its efforts to adhere to the court's scheduling order, the applicable deadline to amend could not reasonably have been met." *Min Gui Ni v. Bat-Yam Food Servs*., Inc., 2014 WL 3810820, *2 (S.D.N.Y. July 30, 2014) (citing *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013)) (internal quotation marks and

citations omitted); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("We now join these [circuit] courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover, we agree with these courts that a finding of 'good cause' depends on the diligence of the moving party.").

Ultimately, the decision as to whether to grant this Motion to file a second amended complaint rests upon a discretionary determination by the Court, with the ultimate goal to resolve this matter in the most cost-efficient, expeditious, and fair manner possible. The Court does agree with Plaintiff's counsel that there is no showing of bad faith, and that the Proposed Second Amended Complaint tracks the claims set forth in the initial pleadings. However, the Court disagrees that there has not been undue delay, or that the granting of this motion would not cause the discovery deadline to be significantly extended. Further, and at the heart of the issue, there has been no showing of the necessary diligence that would justify an amendment so long after the deadline set in the Pretrial Scheduling Order.

The specific issues identified in the Proposed Second Amended Complaint supporting a conspiracy claim are ones that have been known to Plaintiff's counsel, at least in general terms, since the inception of the case. Issues regarding Plaintiff allegedly being boxed out of local landfills, not only by Defendants, but also by other landfill owners, were specifically referenced in the initial pleadings. *See* Am. Compl. at ¶ 302.

8

("Upon information and belief, Waste Connections has told other transfer station and landfill owners/operators to refuse to deal with Twin Bridges access and to deny Twin Bridges access to their disposal facilities.").[1]  The claim that Susan Wright, on behalf of Robert Wright Disposal, Inc., defamed Scott Earl and Twin Bridges was also highlighted in the Amended Complaint, as was other misconduct by Robert Wright Disposal, Inc. *Id*. at 307-308.   Further, Robert Wright Inc. was purchased by Defendant Waste Connections in August of 2020, and therefore became integrated with the Defendants, and any anticompetitive conduct by them after that time would not support a conspiracy claim. With regard to conduct of Robert Wright prior to August of 2020, the PSAC does not specifically identify what that was, or why the Plaintiff, as a competitor, would not have been aware of it.

In sum, no sufficient explanation is made by Plaintiff as to why over two years passed before the assertion of this new claim.  And the Court agrees with defense counsel that allowing such a second amended complaint would significantly delay completion of this case.  This is so for two reasons. First, while the proposed second amended complaint does not (yet) add any new parties, to succeed on the conspiracy claim Plaintiff must, of necessity, discover conduct of third parties who allegedly conspired with Defendants, and obtain evidence of both their conduct and their motive.  *See* Defs' Mem of Law in Opp, at pp. 13-14.   This, in the Court's view, would not be an

---

[1] While the Plaintiff did specifically identify Elnicki Aggregates Inc. in the new filing, PSAC at ¶ 301, it does not explain why this information could not have been discovered earlier.  Further, there is no allegation in the PSAC that Elnicki actually did anything, or that Elnicki had the intent to have Waste Connections monopolize the market.

insubstantial process. Second, defense counsel has identified certain deficiencies in the proposed second amended complaint that would form the basis of a nonfrivolous Rule 12 motion to dismiss.  As noted above, this includes whether the PSAC adequately alleges a conspiracy in a sufficiently detailed non-conclusory fashion, the nature of any agreement between Defendants and any third-party; the specific identification of overt acts in support of the conspiracy; and the date of these activities, including whether they occurred before or after the purchase of Robert Wright Disposal.  *Id.* at pp. 1-10.  The time period to brief and resolve that motion alone will be significant.

The Court, with the assistance of counsel, has endeavored to move this important case towards completion, both for the benefit of the parties themselves, as well as the community at large.  In the Court's view, granting of the Proposed Second Amended Complaint will cause substantial delay, and is not warranted under the facts.

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's Motion to File a Second Amended Complaint (Dkt. No. 132) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**IT IS SO ORDERED.**

Dated: April 9, 2024
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge